**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ARTHUR JAMES SMITH, III

           Plaintiff,

vs.                                                          Case No. 3:17-cv-00489-J-JRK

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,
performing the duties and functions not
reserved to the Commissioner of
Social Security,

           Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Arthur James Smith, III ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is a result of "[cervical fusion of C4-6] for [herniated] dis[c] in [lower back]," "[b]ack injury," arthritis, "[h]igh blood pressure," "[h]igh cholesterol," "[j]oint problems," "high blood sugar," and "high trigl[y]cerides." Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed June 29, 2017, at 76, 87. Plaintiff filed an application for DIB on May 8, 2013, alleging an onset

---

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed June 29, 2017; Reference Order (Doc. No. 14), entered June 30, 2017.

disability date of September 25, 2012. Tr. at 167.[2] Plaintiff's application was denied initially, see Tr. at 76-84, 85, 86, and was denied upon reconsideration, see Tr. at 87-99, 100, 101.

On June 2, 2015, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who appeared with a non-attorney representative,[3] and a vocational expert ("VE"). Tr. at 30-74. At the time of this hearing, Plaintiff was 50 years old. Tr. at 35. The ALJ issued a Decision on August 20, 2015, finding Plaintiff not disabled through the date of the Decision. Tr. at 13-24. The Appeals Council received two pieces of additional evidence, one in the form of a brief from Plaintiff's representative and one in the form of medical records from Orange Park Medical Center. Tr. at 4, 5; see Tr. at 248-49 (brief), Tr. at 883-902 (medical records). On February 10, 2017, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On April 26, 2017, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.[4]

On appeal, Plaintiff claims that "the ALJ erred by not fully and fairly evaluating the medical evidence and failing to fully explain the residual functional capacity [(RFC)] of the Plaintiff in the Decision." Plaintiff's Memorandum (Doc. No. 17; "Pl.'s Mem."), filed August 31, 2017, at 7 (emphasis and some capitalization omitted). Plaintiff makes two main arguments:

---

[2] Although actually completed on May 8, 2013, see Tr. at 167, the protective filing date of the application is listed elsewhere in the administrative transcript as May 7, 2013, see e.g., Tr. at 76, 87.

[3] The transcript of the hearing indicates that Plaintiff was represented by counsel, Tr. at 32, but the notice of hearing form indicates that the same person who appeared on behalf of Plaintiff for the hearing is a "non-attorney," Tr. at 118.

[4] Plaintiff also commenced this action under 42 U.S.C. § 1383(c)(3). See Complaint at 1. However, Plaintiff is only claiming DIB, which falls under 42 U.S.C. § 405(g), and not supplemental security income ("SSI"), which falls under 42 U.S.C. § 1383(c)(3).

(1) the ALJ failed to define the phrase "additional restrictions," thus "caus[ing] the [D]ecision to not be supported by substantial evidence," Pl.'s Mem. at 8, and (2) some of the medical opinions considered by the ALJ did not take into account Plaintiff's lower back conditions and because of this the ALJ mischaracterized Plaintiff's limitations, see Pl.'s Mem. at 9-10. On October 30, 2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 18; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 15-24. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since September 25, 2012, the alleged onset date." Tr. at 15 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: cervical disc disease with radiculopathy ([status post] cervical fusion of C4-6), diabetes mellitus, degenerative joint disease of the left knee and shoulder ([status post] surgical repairs), Achilles tendinopathy, mild bilateral joint disease of the hips, sleep apnea, mild left carpal tunnel syndrome, left inguinal hernia, hypertension, and obesity." Tr. at 15 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 17 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b) except limited to lifting and carrying up to 10 pounds frequently and 20 pounds occasionally; with a sit or stand option that allows for a change of position at least every thirty minutes (this is a brief positional change lasting no more than 3-4 minutes at a time where [Plaintiff] remains at the workstation); sit, stand, and walk for up to six hours each in an eight-hour workday; occasional use of foot controls; occasional overhead reaching; occasional climbing of ramps and stairs; no climbing of ladders or scaffolds; frequent balancing, stooping and crouching; [o]ccasional kneeling; no crawling; no exposure to unprotected heights or moving mechanical parts; and must avoid temperature extremes. Time off task is accommodated by normal breaks.

Tr. at 17 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "capable of performing past relevant work that does not require the performance of work-related activities precluded by the [Plaintiff]'s [RFC]." Tr. at 22 (emphasis and citation

omitted). Specifically, the ALJ found that "[Plaintiff] is able to perform [the work of an Automotive Service Advisor and a Retail Assistant Manager] as actually and generally performed in the national economy . . . ." Tr. at 22. The ALJ then proceeded to make alternative findings regarding the fifth and final step of the sequential inquiry. See Tr. at 23-24. At step five, after considering Plaintiff's age ("47 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ stated that "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform." Tr. at 23. Relying on the testimony of the VE, the ALJ found that Plaintiff could perform the job of "Marker," "Cashier II," and "Ticket Taker." Tr. at 23-24. The ALJ concluded that Plaintiff "has not been under a disability . . . from September 25, 2012, through the date of th[e D]ecision." Tr. at 24 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by

substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The undersigned first sets out a summary of the relevant medical evidence and the applicable law. Then, Plaintiff's arguments are addressed.

**A. Summary of Relevant Medical Evidence**

On September 24, 2012, Plaintiff sustained an injury to his neck, back, and left knee. See Tr. at 250-52. Subsequently, on September 25, 2012, Plaintiff was treated at a CareSpot by Nadeem Maalouli, M.D., who identified that Plaintiff had functional limitations in his neck, lower back, and left knee, and opined that Plaintiff be limited only to desk duties if available. Tr. at 252; see Tr. at 250-54. On that same date, Plaintiff was also treated at Solantic Baptist Urgent Care, where x-rays of his cervical spine showed "an anterior plate and screw fixation at C4-6[,] spondylosis at C7[, and] facet spondylosis on the left at C3-4 . . . ," Tr. at 258, and x-rays of his back showed a "Grade 1 spondylotisthesis at L5-S1," Tr. at 259.

On November 8, 2012, Plaintiff began seeing Kevin Murphy, M.D., for evaluation of his left knee. Tr. at 860-65. Plaintiff saw Dr. Murphy exclusively for knee pain. See Tr. at 395-430, 847-67. On February 27, 2013, Dr. Murphy performed surgery on Plaintiff's left knee. Tr. at 415-16. On March 4, 2013, upon referral by Dr. Murphy, Plaintiff began a series of nine

sessions of physical therapy at Heartland Rehabilitation Services. See Tr. at 773-93. On his ninth and final session on April 1, 2013, Plaintiff reported that "his knee [was] mostly pain free." Tr. at 774.

On August 9, 2013, Sunday U. Ero, M.D., performed an "Independent Medical Examination (IME)" and noted Plaintiff's complaints of "neck pain radiating to the left arm and left elbow[,] low back pain with no significant leg pain[,] and left knee pain." Tr. at 841 (capitalization omitted). Dr. Ero diagnosed Plaintiff with, among other things, "adjacent segment degeneration at C3-C4 and C6-C7 with associated C3-C4 disc protrusion and left lateral foraminal stenosis including left upper extremity radiculopathy[, . . .] lumbar L5-S1 degenerative disc disease[ . . . , and] status post arthroscopic left knee surgery for meniscus injury." Tr. at 844 (capitalization omitted). Dr. Ero offered no opinion on Plaintiff's work restriction and deferred that decision to Plaintiff's treating physicians. Tr. at 845.

The administrative transcript also indicates that during the relevant period, Plaintiff was treated by Robert Hurford Jr., M.D., for back and neck pain starting as early as November 13, 2012 and as late as April 18, 2014. See Tr. at 868-81. During a deposition on August 22, 2013 in relation to Plaintiff's worker's compensation claim, Dr. Hurford testified that he had not had a chance to evaluate Plaintiff's lower back condition and that he was not able to render an opinion regarding his lower back at that time. Tr. at 487-88. At a later visit on April 18, 2014, however, Dr. Hurford did examine Plaintiff's lower back. See Tr. at 868-72. On this date, he diagnosed Plaintiff with "L5-S1 severe bilateral neuroforaminal stenosis" and recommended "physical therapy 2-3 days per week for 6 weeks." Tr. at 871.

Two additional medical experts, Robert Schilling, PhD, and Mary Seay, M.D., evaluated Plaintiff but did not treat him. See Tr. at 94 (Dr. Schilling noting, in part, mild

restriction of activities of daily living and mild difficulties in maintaining concentration, persistence, or pace), Tr. at 98 (Dr. Seay stating that "[t]he evidence shows that the individual has some limitations in the performance of certain work activities[,but that] these limitations would not prevent the individual from performing past relevant work as [a] service adviser" (emphasis omitted)).

The Appeals Council received additional evidence showing that on August 18, 2015, Plaintiff underwent, in part, an "L5-S1 decompression, posterolateral fusion . . ." performed by Mark A. Spatola, M.D. Tr. at 897-99; see Tr. at 883-902.

## B. Applicable Law[6]

The Regulations establish a "hierarchy" among medical opinions[7] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the

---

[6] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed his claims before that date, the undersigned cites the rules and Regulations that were in effect on the date of the ALJ's Decision, unless otherwise noted.

[7] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[8] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440

---

[8] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

(11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279

(11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

**C. ALJ's Alleged Failure to Define "Additional Restrictions"**

**1. Parties' Arguments**

According to Plaintiff, the ALJ "stated that [Plaintiff] was limited to light duty work with some additional limitations without ever defining the term "additional [limitations]" in several sections of the [D]ecision." Pl.'s Mem. at 7 (emphasis omitted).Plaintiff argues that "the use of the term 'additional limitations' makes it impossible to determine what other limitations may affect the Plaintiff's [RFC]." Id. at 8. Plaintiff concludes that "the use of this [phrase],

without more definition, causes the [D]ecision to not be supported by substantial evidence." Id.

Responding, Defendant contends that "[t]he ALJ's RFC findings are supported by the objective evidence of record" and that "Plaintiff points to no specific error in the ALJ's evaluation of the opinion evidence." Def.'s Mem. at 7 (citation omitted). Defendant argues that "[i]n reaching his conclusions, the ALJ considered the evidence, including the documentary evidence and Plaintiff's testimony, and concluded that Plaintiff's subjective allegations were not consistent with the objective medical evidence." Id. (citations omitted). Defendant concludes that "the ALJ's RFC determination is supported by substantial evidence." Id. at 8.

**2. ALJ's Assessment of Plaintiff's RFC**

Although the ALJ did not specifically elaborate on what he meant by "additional restrictions" in discussing the medical evidence, the ALJ provided a detailed RFC, which included Plaintiff's limitations or "restrictions." See Tr. at 17; supra at 4. In his RFC determination, the ALJ stated that Plaintiff can perform "light work as defined in 20 [C.F.R. §] 404.1567(b)" with the following limitations, among others: "with a sit or stand option that allows for a change of position at least every thirty minutes . . . ; sit, stand, and walk for up to six hours each in an eight-hour workday; . . . lifting and carrying up to 10 pounds frequently and 20 pounds occasionally; . . . occasional overhead reaching; occasional climbing of ramps and stairs; no climbing of ladders or scaffolds; frequent balancing, stooping and crouching; occasional kneeling; no crawling. . . ." Tr. at 17 (emphasis omitted). These limitations are generally consistent with the record as a whole and are supported by substantial evidence. See Tr. at 483 (Dr. Hurford stating that Plaintiff would be out of work post-surgery for about

six to eight weeks and then limited to light duty status for about four more months with potential maximum medical improvement within six months to a year), Tr. at 539 (Dr. Ero stating that Plaintiff would be out of work post-surgery for "six . . . , maybe eight weeks[,]" at which point he could return to work at "light duty status and then progressively possibly into full duty"), Tr. at 588-89 (Dr. Murphy opining that Plaintiff should have achieved maximum medical improvement three months after surgery but that he could not say for sure because Plaintiff had not returned for a follow-up), Tr. at 565 (Dr. Murphy providing restrictions of "[n]o lifting, pushing, or pulling any more than 15 pounds, no repetitive kneeling, and no repetitive squatting"), Tr. at 263 (Dr. Maalouli placing the following limitations on Plaintiff: no carrying or lifting overhead objects heavier than ten pounds; no climbing; no kneeling; no squatting; "no prolonged sitting / standing [for longer than] 20 min[utes] at a time"). The ALJ properly considered all limitations and restrictions imposed by Plaintiff's impairments, and the RFC is supported by substantial evidence.

**D. ALJ's Alleged Mischaracterization of the Medical Evidence**

   **1. Parties' Arguments**

Plaintiff contends that neither Dr. Hurford nor Dr. Murphy formed an opinion regarding Plaintiff's lower back problem. Pl.'s Mem. at 9-10. It follows, argues Plaintiff, that "the ALJ's reliance on [Dr. Hurford and Dr. Murphy's] opinions were misplaced and should not have formed the basis for assessing a[n] [RFC], particularly for the low back condition." Id. at 9 (citations omitted). Thus, Plaintiff concludes, "The [D]ecision of the ALJ is not supported by substantial evidence because [of] . . . the ALJ's mischaracterization of the limitations that were placed on [Plaintiff] by the treating and/or examining physicians." Id. at 10.

Responding, Defendant asserts that "[t]he ALJ's RFC findings are supported by the objective evidence of the record" and that "Plaintiff points to no specific error in the ALJ's evaluation of the opinion evidence." Def.'s Mem. at 7 (citation omitted). According to Defendant, "[t]he ALJ noted that [Dr. Hurford and Dr. Murphy's] opinions were generally consistent with the performance of light work and were supported by the objective evidence of record."[9] Id. (citations omitted). Defendant concludes that "substantial evidence supports the ALJ's decision that Plaintiff was not disabled." Id. at 3 (emphasis omitted).

**2. ALJ's Assessment of Plaintiff's RFC**

Although Dr. Murphy and Dr. Hurford's medical opinions concerning Plaintiff's work capacity do not take into account Plaintiff's lower back symptoms, the ALJ's consideration of these opinions does not result in a mischaracterization of Plaintiff's limitations. The ALJ considered evidence other than these two doctors' opinions and found that the two doctors' opinions - that Plaintiff is limited to light duty work with some additional restrictions - were generally consistent with the record as a whole. Tr. at 18-22; see Tr. at 94 (state agency psychological consultant Robert Schilling, PhD, stating that "[b]ased on the totality of evidence, [Plaintiff] is judged to be capable of independent functioning and there is no indication of a severe mental impairment at this time"), Tr. at 98 (state agency medical consultant Mary Seay, M.D., finding that "[t]he evidence shows that the individual has some limitations in the performance of certain work activities[,but that] these limitations would not prevent the individual from performing past relevant work as [a] service adviser" (emphasis

---

[9] Defendant also asserts that Dr. Ero's opinion was "generally consistent with the performance of light work and [was] supported by the objective evidence of record," see Def.'s Mem. at 7, but Dr. Ero offered no opinion on Plaintiff's work restriction and referred that decision to Plaintiff's treating physicians, see Tr. at 845.

omitted)), Tr. at 263 (Dr. Maalouli indicating that "[Plaintiff] may return to activities so long as [he] adheres to [certain] functional limitations and restrictions"). Moreover, although Dr. Hurford stated in his deposition on August 22, 2013 that he had not had a chance to evaluate Plaintiff's lower back, see Tr. at 487-88, the ALJ took into account Plaintiff's later visit with Dr. Hurford on April 18, 2014, Tr. at 19, during which Dr. Hurford evaluated Plaintiff's lower back, see Tr. at 874 (prescribing only conservative treatment for Plaintiff's lower back condition).

Furthermore, although Plaintiff presented additional evidence to the Appeals Council confirming that he underwent another back surgery just prior to the ALJ's Decision, Plaintiff does not challenge the Appeal Council's denial of his request for review. See Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1266 (11th Cir. 2007) (recognizing that "when a claimant challenges an [ALJ]'s decision to deny benefits, but not the decision of the Appeals Council to deny review of the [ALJ], [the court] need not consider evidence submitted to the Appeals Council" (citing Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998)).

The ALJ did not err in his evaluation of the medical evidence.

## V. Conclusion

After a thorough review of the entire record, the Court finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on July 31, 2018.

_signature_
JAMES R. KLINDT
United States Magistrate Judge

jec

Copies to:

Counsel of record